**ORAL ARGUMENT HAS NOT YET BEEN SCHEDULED**
**No. 22-5308**

---

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———————————————

AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES,
NATIONAL COUNCIL OF HUD LOCALS COUNCIL 222,
AFL-CIO,

Appellee,

v.

FEDERAL LABOR RELATIONS AUTHORITY AND SUSAN
TSUI GRUNDMANN, IN HER OFFICIAL CAPACITY AS
CHAIRMAN OF THE FEDERAL LABOR RELATIONS
AUTHORITY,

Appellant.

———————————————

APPEAL OF DISTRICT COURT DECISIONS

———————————————

**BRIEF FOR APPELLANT**
**FEDERAL LABOR RELATIONS AUTHORITY**

———————————————

REBECCA J. OSBORNE
*Acting Solicitor*

NARIEA K. NELSON
*Attorney*

Federal Labor Relations Authority
1400 K Street, N.W. Suite 200
Washington, D.C. 20424
(771) 444-5775
solmail@flra.gov

**CERTIFICATE OF PARTIES, RULINGS, AND RELATED CASES**

### A.    Parties

The following parties appeared before the Federal Labor Relations Authority (the "FLRA" or "Authority"): the American Federation of Government Employees, National Council of HUD Locals Council 222, AFL-CIO (the "Union") and the Department of Housing and Urban Development ("HUD").

The following parties appeared before the District Court for the District of Columbia ("District Court"): the Union; the FLRA; and Colleen Duffy Kiko, in her official capacity as a Chairman of the FLRA.

The following parties are in this Court: the Union; the FLRA; and Susan Grundmann, in her official capacity as Chairman of the FLRA.

### B.    Rulings Under Review

The rulings under review in this matter are:

1.    The District Court's order and decision denying the Authority's Motion to Dismiss, *American Federation of Government Employees, National Council of HUD Locals*

*Council 222, AFL-CIO v. FLRA*, No. 19-cv-00998 (D.D.C.)

ECF Nos. 24 and 25; and

2.    the District Court's order and decision granting the Union's

Motion for Summary Judgment and denying the Authority's

Motion for Reconsideration and Cross-Motion for Summary

Judgment, *American Federation of Government Employees,*

*National Council of HUD Locals Council 222, AFL-CIO v.*

*FLRA*, No. 19-cv-00998 (D.D.C.) ECF No. 37.

## C.    Related Cases

This case is an appeal of orders and decisions rendered by the

District Court in *American Federation of Government Employees,*

*National Council of HUD Locals Council 222, AFL-CIO v. FLRA*, No.

19-cv-00998 (D.D.C.).

Other than the District Court case, this case has not previously

been before this Court or any other court, nor is the Authority aware of

any related cases pending before this Court or any other court.

# TABLE OF CONTENTS

CERTIFICATE OF PARTIES, RULINGS, AND RELATED
    CASES ................................................................................. i

    A.    Parties ................................................................... i

    B.    Rulings Under Review ......................................... i

    C.    Related Cases ...................................................... ii

TABLE OF CONTENTS ............................................................ iii

TABLE OF AUTHORITIES ...................................................... vi

GLOSSARY ............................................................................... xii

STATEMENT REGARDING JURISDICTION ...................... 1

RELEVANT STATUTORY PROVISIONS ............................. 2

STATEMENT OF ISSUES PRESENTED ............................. 2

STATEMENT OF THE CASE ................................................ 3

    A.    Relevant Statutory Background ......................... 3

    B.    Procedural History .............................................. 6

STATEMENT OF THE FACTS ............................................. 10

    A.    Background ......................................................... 10

    B.    Summaries 9 and 10 .......................................... 11

    C.    The Union's District Court Case ....................... 15

SUMMARY OF THE ARGUMENT ...................................... 16

STANDARD OF REVIEW ...................................................... 20

iii

ARGUMENT ....................................................................... 21

I.    The District Court Lacked Jurisdiction to Review the
      Authority's Decisions .................................................. 21

      A.    Section 7123(a) bars all judicial review, including
            *Leedom* review. ................................................ 21

      B.    *Griffith*'s limited "constitutional challenges" exception
            to § 7123(a)'s express preclusion of judicial review does
            not apply. ..................................................... 24

II.   The Authority's Decisions Were Within Its Statutorily-
      Delegated Powers Under § 7122(a) ................................. 27

      A.    The Statute grants the Authority broad powers to take
            such actions as the Authority deems necessary. ............... 29

      B.    Finding that the underlying grievance concerned
            classification and was not arbitrable was an
            "action…concerning" Summary 10 under § 7122(a) ........... 30

      C.    Vacating Summaries 1-9 was a necessary predicate act
            for the Authority's permissible action "concerning"
            Summary 10. .................................................. 35

III.  The Authority's Decisions Do Not Run Afoul of any Specific
      Affirmative Command in § 7122 ................................... 39

      A.    The Authority's decisions are not contrary to a specific
            prohibition in the Statute that is clear and mandatory. ..... 39

      B.    "Final" is not clear because it is not clear what effect
            finality has on subsequent proceedings. ..................... 41

      C.    "Binding" is unclear because who is bound is
            ambiguous. ................................................... 47

iv

D.    "Final and binding" is not clear or mandatory because it is ambiguous what preclusive effect "final and binding" status has, and on whom.................................... 49

E.    The Statute's grant of power to take necessary actions "concerning the award" under § 7122(a) is not a "clear and mandatory" negative prohibition against taking actions concerning more than one award. ......................... 53

IV.    Any Authority Error was not Sufficiently "Extreme" to Constitute a *Leedom* Violation.................................... 57

CONCLUSION ...................................... 64

FED. R. APP. P. RULE 32(A) CERTIFICATION................................ 65

CERTIFICATE OF SERVICE............................... 65

v

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Am. Fed'n of Gov't Emps., AFL-CIO v. FLRA,*
   850 F.2d 782 (D.C. Cir. 1988) ........................................... 51, 52, 53, 61

*Am. Fed'n of Gov't Emps., AFL-CIO v. FLRA,*
   778 F.2d 850 (D.C. Cir. 1985) ........................................................ 38

*Am. Fed'n of Gov't Emps., AFL-CIO, Loc. 446 v. Nicholson,*
   475 F.3d 341 (D.C. Cir. 2007) ....................................................... 5, 51

*Am. Fed'n of Gov't Emps., AFL-CIO v. Loy,*
   367 F.3d 932 (D.C. Cir. 2004) ........................................................ 18

*Am. Fed'n of Gov't Emps., AFL-CIO v. Trump,*
   929 F.3d 748 (D.C. Cir. 2019) ........................................................ 20

*Am. Fed'n of Gov't Emps. Local 3615*
   54 FLRA 494 (1998) ...................................................................... 50

*Am. Fed'n of Gov't Emps. Local 3690 v. FLRA,*
   3 F.4th 384 (D.C. Cir. 2021) ............................................................ 5

*Am. Fed'n of Gov't Emps., Nat'l Council of HUD Locs. Council 222,*
   *AFL-CIO v. FLRA,*
   19-cv-00998, ECF No. 25 (D.D.C. Aug. 23, 2021) .................................. 1

*Am. Fed'n of Gov't Emps., Nat'l Council of HUD Locs. Council 222,*
   *AFL-CIO,*
   19-cv-00998, ECF No. 37 (D.D.C. Sept. 27, 2021) ................................. 1

*Ass'n of Admin. L. Judges v. FLRA,*
   397 F.3d 957 (D.C. Cir. 2005) ......................................................... 52

*Ass'n of Civilian Technicians, Inc. v. FLRA,*
   283 F.3d 339 (D.C. Cir. 2002) .................................................. 5, 22, 23

*Azar v. Allina Health Servs.*,
   139 S. Ct. 1804 (2019) ............................................................ 42

*Bd. of Governors of Fed. Rsrv. Sys. v. MCorp Fin.*,
   502 U.S. 32 (1991) ................................................................. 21

*Buffkin v. Dep't of Def.*,
   957 F.3d 1327 (Fed. Cir. 2020) ............................................. 45

*Bureau of Alcohol, Tobacco, and Firearms v. FLRA*,
   464 U.S. 89 (1983) ................................................................. 20

*City of Arlington, Tex. v. FCC*,
   569 U.S. 290 (2013) ............................................................... 34

*Comm'r of Internal Revenue v. Lundy*,
   516 U.S. 235 (1996) ............................................................... 48

*Dep't of Health & Hum. Servs., Soc. Sec. Admin. v. FLRA*,
   976 F.2d 1409 (D.C. Cir. 1992) ............................................. 44

*EEOC v. Waffle House, Inc.*,
   534 U.S. 279 (2002) ............................................................... 49

*Fed. Educ. Ass'n v. FLRA*,
   927 F.3d 514 (D.C. Cir. 2019) ............................................... 56

*Griffith v. FLRA*,
   842 F.2d 487 (D.C. Cir. 1988) ................................. 6, 22, 25, 26

*Hall St. Assocs., L.L.C. v. Mattel, Inc.*,
   552 U.S. 576 (2008) ............................................................... 63

*Herrera v. Dep't of Homeland Sec.*,
   498 F. App'x 35 (Fed. Cir. 2012) ........................................... 45

*Impact Energy Res., LLC v. Salazar,*
    693 F.3d 1239 (10th Cir. 2012) ............................................................ 43

*Jordan Hosp. v. Leavitt,*
    571 F. Supp. 2d 108 (D.D.C. 2008) .................................................. 52,53

*Kreis v. Sec'y of Air Force,*
    866 F.2d 1508 (D.C. Cir. 1989) ............................................................ 29

*Lamar, Archer & Cofrin, LLP v. Appling,*
    138 S. Ct. 1752 (2018) .................................................................... 31, 32

*Leedom v. Kyne,*
    358 U.S. 184 (1958) .......................................................... 3, 6, 16, 26

*Lepre v. Dep't of Labor,*
    275 F.3d 59 (D.C. Cir. 2001) .......................................................... 24, 57

*Lopez v. Davis,*
    531 U.S. 230 (2001) ............................................................................ 29

*Luis v. United States,*
    136 S. Ct. 1083 (2016) ........................................................................ 35

*Morales v. Soc. Sec. Admin.,*
    107 M.S.P.R. 360 (2007) .............................................................. 45, 46

*Nat'l Air Traffic Controllers Ass'n AFL-CIO v. FSIP,*
    437 F.3d 1256 (D.C. Cir. 2006) ............................................................ 57

*Nat'l Treasury Emps. Union v. FLRA,*
    392 F.3d 498 (D.C. Cir. 2004) ................................................. 4, 42, 61

*Nyunt v. Broad. Bd. of Governors,*
    589 F.3d 445 (2009) .......................................................... 6, 17, 57, 62

*Off. and Prof. Emps. Int'l Union Loc. 2001,*
    62 FLRA 67 (2007) ............................................................................ 58

*Railway Lab. Execs.' Ass'n v. Nat'l Mediation Bd.*,
   29 F.3d 655 (D.C. Cir. 1994) .......................................................53, 54

*Shaughnessy v. Pedreiro*,
   349 U.S. 48 (1955).......................................................................41

*Tokyo Kikai Seisakusho, Ltd. v. United States*,
   529 F.3d 1352 (Fed. Cir. 2008) ..............................................36

*U.S. Dep't of Agric. Food & Consumer Serv. Dall., Tex.*,
   60 FLRA 978 (2005) ..................................................................37, 58

*U. S. Dep't of the Army, Fort Polk, La.*,
   61 FLRA 8 (2005) ........................................................................58

*U.S. Dep't of Def. Educ. Activity*,
   70 FLRA 84 (2016) ......................................................................56

*U.S. Dep't of Homeland Sec., U.S. Customs & Border Prot., Scobey, Mont. v. FLRA*,
   784 F.3d 821 (D.C. Cir. 2015) ...............................6, 18, 26, 27

*U.S. Dep't of Hous. & Urb. Dev.*,
   71 FLRA 17 (2019) ................................ 9, 14, 23, 25, 38, 51, 62

*U.S. Dep't of Hous. & Urb. Dev.*,
   70 FLRA 605 (2018) ..........................8, 13, 19, 23, 28, 35, 38, 39, 59, 60

*U.S. Dep't of Hous. & Urb. Dev.*,
   70 FLRA 38 (2016) .....................................................................7, 11

*U.S. Dep't of Hous. & Urb. Dev.*,
   69 FLRA 213 (2016) ..................................................................7, 11

*U.S. Dep't of Hous. & Urb. Dev.*,
   69 FLRA 60 (2015) .....................................................................7, 11

*U.S. Dep't of Hous. & Urb. Dev.,*
   68 FLRA 631 (2015) ........................................................................ 7, 11

*U.S. Dep't of Hous. & Urb. Dev.,*
   65 FLRA 433 (2011) ............................................................................ 10

*U.S. Dep't of Hous. & Urb. Dev.,*
   59 FLRA 630 (2004) ............................................................................ 10

*U.S. Dep't of the Interior v. FLRA,*
   1 F.3d 1059 (10th Cir. 1993) ......................................................... 62, 63

*U.S. Dep't of the Interior, U.S. Park Police,*
   67 FLRA 345, 345 (2014) .................................................................... 56

*U.S. Dep't of Just. v. FLRA,*
   981 F.2d 1339 (D.C. Cir. 1993) ........................................................... 21

*U.S. Dep't of Treasury, U.S. Customs Service*
   43 F.3d 682 (D.C. Cir. 1994) ............................................... 22, 25, 61

*U.S. Dep't of Veterans Affs., Veterans Affs. Med. Ctr., Asheville N.C.,*
   57 FLRA 681 (2002) ............................................................................ 61

*Woodruff v. Peters,*
   482 F.3d 521 (D.C. Cir. 2007) ............................................................ 20

## Statutes

5 U.S.C. §§ 7101-7135 (2018) ............................................................. 2, 3

5 U.S.C. § 7101(b) ............................................................... 52, 53, 62

5 U.S.C. § 7116(a)(8) .............................................................. 3, 4, 61

5 U.S.C. § 7121 ........................................ 3, 18, 29, 35, 44, 45, 48, 49, 57

5 U.S.C. § 7122 .. 2, 3, 4, 5, 8, 12, 17, 19, 21, 23, 27, 28, 29, 30, 32, 33, 34, 35, 38, 39, 40, 41, 42, 43, 44, 45, 46, 47, 48, 49, 50, 51, 53, 55, 56, 60, 63

5 U.S.C. § 7123 ........... 2, 5, 6, 15, 17, 18, 21, 22, 23, 24, 25, 26, 27, 41, 45

28 U.S.C. § 1291 ................................................................................................... 2

**Rules**

Fed. R. App. P. 4 ................................................................................................. 2

Fed. R. App. P. 32(a) ....................................................................................... 65

Fed. R. Civ. P. 12(b)(6) ................................................................................... 15

**Other Authorities**

H.R. Rep. No. 95-1717, at 153, 1978 U.S.C.C.A.N. 2860 .................. 18, 23

# GLOSSARY

| | |
|---|---|
| **Agency** | U.S. Department of Housing and Urban Development |
| **Arbitrator** | Andrée McKissick |
| **Authority** | The Federal Labor Relations Authority |
| **CBA** | Collective Bargaining Agreement |
| **FLRA** | The Federal Labor Relations Authority |
| **HUD** | U.S. Department of Housing and Urban Development |
| **JA** | Joint Appendix |
| **Statute** | The Federal Service Labor-Management Relations Statute, 5 U.S.C. §§ 7101-7135 (2018) |
| **ULP** | Unfair labor practice |
| **Union** | Appellee, American Federation of Government Employees, National Council of HUD Locals, Council 222, AFL-CIO |

## STATEMENT REGARDING JURISDICTION

The Federal Labor Relations Authority (the "FLRA" or "Authority") is a federal government agency that adjudicates disputes between federal government agencies and their exclusive representatives. The FLRA appeals the District Court of the District of Columbia's ("District Court") order and decision denying the Authority's Motion to Dismiss in *American Federation of Government Employees, National Council of HUD Locals Council 222, AFL-CIO v. FLRA*, No. 19-cv-00998, ECF Nos. 24 and 25 (D.D.C. Aug. 23, 2021) (slip op.) (JA 536-50).  The FLRA also appeals the District Court's order and decision granting the American Federation of Government Employees, National Council of HUD Locals Council 222's ("Union") Motion for Summary Judgment and denying the Authority's Motion for Reconsideration and Cross-Motion for Summary Judgment in *American Federation of Government Employees, National Council of HUD Locals Council 222, AFL-CIO v. FLRA*, No. 19-cv-00998, ECF No. 37 (D.D.C. Sept. 27, 2022) (slip op.) (JA 823-39).  That order and decision was final.

In accordance with Rule 4 of the Federal Rules of Appellate Procedure, the Authority timely filed the instant appeal on November

22, 2022.  Fed. R. App. P. 4.  This Court has jurisdiction over the

Authority's appeal of the District Court's decision.  28 U.S.C. § 1291.

## RELEVANT STATUTORY PROVISIONS

All relevant statutory and regulatory provisions are in the

attached Statutory Addendum.  (Add.)

## STATEMENT OF ISSUES PRESENTED

1. Whether the District Court erred when it found it had

   jurisdiction to review two Authority decisions concerning

   arbitration awards even though § 7123(a)(1) of the Federal

   Service Labor-Management Relations Statute, 5 U.S.C.

   §§ 7101-7135 (2018) (the "Statute") precludes judicial review

   of such awards.

2. Whether the District Court erred in finding the preclusion of

   § 7123(a)(1) is implied rather than express even though that

   section provides that only awards "other than an order

   under… § 7122 of this title (involving an award by an

   arbitrator)" may be appealed to a U.S. court of appeals.

3.      Whether the District Court erred in finding the Authority

acted in a manner that was contrary to a specific prohibition

of the Statute that was clear and mandatory.

4.      Whether the District Court erred in finding any alleged

Authority error was sufficiently extreme to warrant

jurisdiction under *Leedom v. Kyne*, 358 U.S. 184 (1958).

## STATEMENT OF THE CASE

### A.      Relevant Statutory Background

The Statute provides a framework for regulating labor-

management relations in the federal government.  5 U.S.C. §§ 7101-7135

(2018).  The Statute sets forth requirements for collective bargaining

between agencies and unions.  *Id*. §§ 7114 (a)(1); 7116; 7103(a)(8);

7103(a)(12).  One such requirement is that every collective bargaining

agreement ("CBA") must contain a negotiated grievance procedure.  *Id*.

§ 7121(a)(1).  Some issues, such as any "classification of any position,"

are not grievable as a jurisdictional matter.  *Id.* § 7121(c)(5).

Grievances are "subject to binding arbitration."  *Id.*

§ 7121(b)(1)(C)(iii).  After an arbitrator issues an award, either party

may file exceptions to the award with the Authority.  *Id*. § 7122(a).  The

3

Authority then reviews the award to determine if it is deficient "because it is contrary to any law, rule, or regulation," or on other grounds. *Id.* § 7122(a)(1). If the Authority finds the award is deficient, the Authority "may take such action…concerning the award as it considers necessary, consistent with applicable laws, rules, or regulations." *Id.* The Statute does not otherwise expressly circumscribe the actions the Authority may take concerning an award. *Id.* Nor does the Statute define "concerning." *Id.*

If no exception to an arbitrator's award is filed, "the award shall be final and binding." *Id.* § 7122(b). The Statute does not define "final" or "binding," nor does it specify what, if any, preclusive effect a "final and binding" award has on the parties, the arbitrator, the Authority, or federal courts. *Id.* To be sure, finality determines when an agency must begin complying with the award—because it is an unfair labor practice ("ULP") for an agency to fail to comply with an arbitrator's final award. *See Nat'l Treasury Emps. Union v. FLRA* ("*NTEU 2004*"), 392 F.3d 498, 499 (D.C. Cir. 2004); 5 U.S.C. § 7116(a)(8). However, even if an agency does not file any exceptions to an arbitrator's final award, it may collaterally challenge the award on jurisdictional grounds

when defending itself in an ULP proceeding. *Am. Fed'n of Gov't Emps., AFL-CIO, Loc. 446 v. Nicholson* ("*Nicholson*"), 475 F.3d 341, 352 (D.C. Cir. 2007) ("[T]his court has similarly approved the FLRA's authority to review the arbitrability of a dispute when challenged in an ULP"). The Authority may thus decline to enforce even "final and binding" arbitration awards on collateral review. *See id.*

The Statute expressly bars judicial review of Authority decisions "under § 7122 of this title (involving an award by an arbitrator), unless the order involves an ULP." 5 U.S.C. § 7123(a)(1). This Court has repeatedly recognized that Authority decisions involving review of arbitrators' awards are expressly not subject to judicial review. *See Am. Fed'n of Gov't Emps. Local 3690 v. FLRA,* 3 F.4th 384, 386 (D.C. Cir. 2021). The Statute expressly limits judicial review to U.S. courts of appeals even where a plaintiff seeks "judicial review" of an order not involving an arbitrator's award. 5 U.S.C. § 7123(a).

Section 7123(a)'s express limitations on judicial review also preclude judicial review in the U.S. district courts. *Ass'n of Civilian Technicians, Inc. v. FLRA* ("*ACT 2002*"), 283 F.3d 339, 341-42 (D.C. Cir. 2002). The one exception to § 7123(a)'s express preclusion of judicial

review in district courts is the exception for constitutional challenges created by this Court in *Griffith v. FLRA,* 842 F.2d 487 (D.C. Cir. 1988). *See U.S. Dep't of Homeland Sec., U.S. Customs & Border Prot., Scobey, Mont. v. FLRA* ("*Scobey*"), 784 F.3d 821, 823 (D.C. Cir. 2015). Non-constitutional *Leedom* claims against the Authority are subject to § 7123(a)'s jurisdictional bar. *See Griffith*, 842 F.2d at 501.

Under *Leedom*, courts may review agency decisions made in excess of the agency's delegated powers and contrary to a specific, clear, and mandatory statutory provision. *See Leedom*, 358 U.S. at 188. In order to succeed on a *Leedom* claim, a plaintiff must demonstrate that (1) "the statutory preclusion of review is implied rather than express," (2) "there is no alternative procedure for review of the statutory claim," and (3) "the agency clearly acts in excess of its delegated powers and contrary to a specific prohibition in the statute that is clear and mandatory." *Nyunt v. Broad. Bd. of Governors*, 589 F.3d 445, 449 (2009) (citations omitted).

## B.    Procedural History

This dispute arose from a Union grievance alleging the U.S. Department of Housing and Urban Development ("HUD") violated the

CBA. (JA 150-53.)  The Union alleged that HUD posted vacancies for certain positions with a non-competitive promotion potential to the GS-13 pay grade without offering the positions to Union members. (JA 150-53).  Following an initial arbitration award, the Union, HUD, and the Arbitrator met on multiple occasions to discuss implementation of the award.  In total, the Arbitrator held ten implementation meetings with the Union and HUD and issued separate summaries after each meeting. (JA 52-115.)

HUD filed exceptions to Summaries 3 and 6 contending the Arbitrator had exceeded her authority modifying the awards.  The Authority dismissed HUD's exceptions to Summaries 3 and 6, *inter alia*, as untimely and denied HUD's requests for reconsideration.  *U.S. Dep't of Hous. & Urb. Dev.* ("*HUD IV*"), 68 FLRA 631, 634-35 (2015); *U.S. Dep't of Hous. & Urb. Dev.* ("*HUD V*"), 69 FLRA 60, 634-35 (2015); *U.S. Dep't of Hous. & Urb. Dev.* ("*HUD VI*"), 69 FLRA 213, 221-22 (2016); *U.S. Dep't of Hous. & Urb. Dev.* ("*HUD VII*"), 70 FLRA 38, 38-39 (2016).

Subsequently, the Arbitrator issued Summary 10, which stated that "given the current posture of the case, there is a need for a formal evidentiary hearing so that this Arbitrator can ascertain the status of

implementation." (JA 117-18.)  HUD timely filed exceptions to Summary 10 under § 7122(a), contending, *inter alia*, that Summary 10 was contrary to law and improperly modified the second merits award, which originally "made no mention of a formal hearing on the record with testimony from Agency officials compelled by subpoenas." (JA 8-51.)

The Authority issued a decision in *HUD VIII* vacating the Arbitrator's previous awards and Summaries 1-10, as well as its own decisions in *HUD I* through *HUD VII*.  *U.S. Dep't of Hous. & Urb. Dev.* ("*HUD VIII*"), 70 FLRA 605 (2018).  The Authority found that "[a]t all times . . . the essential nature of this grievance–as demonstrated by the requested remedy–concerned classification . . . Therefore, the Authority should have declared this grievance to be non-arbitrable from the outset."  *Id*. at 608.  The Authority noted the Arbitrator's lack of jurisdiction over Summary 10 necessarily meant she also lacked jurisdiction over Summaries 1-9, all of which concerned the same underlying grievance.  *Id*.  Therefore, all previous awards were *ultra vires*.  *Id*.

The Union filed for reconsideration of *HUD VIII*, which the Authority denied in *HUD IX*.  *U.S. Dep't of Hous. & Urb. Dev.* ("*HUD IX*"), 71 FLRA 17 (2019).

Thereafter, the Union filed a complaint with the District Court asserting the Authority's decisions in *HUD VIII* and *HUD IX* were *ultra vires* under *Leedom*, and violated the Administrative Procedure Act ("APA").  (JA 375-92.)  The Authority moved to dismiss the complaint.

The District Court dismissed all of the Union's claims other than its *Leedom* claim.  (JA 556.)  On the *Leedom* claim, the District Court found that preclusion of judicial review under the Statute was implied rather than express, which allowed the District Court to exercise jurisdiction over the case.  (JA 546-48.)  Subsequently, the District Court granted the Union's Motion for Summary Judgment and denied the Authority's Motion for Reconsideration and Cross-Motion for Summary Judgment.  (JA 822.)

The Authority now appeals the District Court's orders and decisions.

9

## STATEMENT OF THE FACTS

### A.    Background

The Union is the exclusive representative of certain HUD employees.  (JA 150.)  In 2002, HUD advertised vacancies for various positions, all with maximum noncompetitive promotion potential to the GS-13 pay grade. (JA 150.)  The Union filed a grievance alleging HUD violated the CBA by posting the positions without offering similar advancement opportunities to Union members already working in the same positions without noncompetitive promotion potential beyond a GS-12 pay grade.  (JA 150-53.)

The Union and HUD began arbitration to resolve the grievance. The Arbitrator found that the subject matter of the grievance was arbitrable and did not involve a classification issue, which HUD disputed in exceptions to the Authority. (JA 125.)  In *HUD I* and *HUD II*, the Authority remanded two arbitrability awards and a first merits award to the Arbitrator for clarification and formulation of a remedy that did not concern classification.  *U.S. Dep't of Hous. & Urb. Dev.* ("*HUD I*"), 59 FLRA 630 (2004); *U.S. Dep't of Hous. & Urb. Dev.* ("*HUD II*"), 65 FLRA 433 (2011).

10

Over the next two years, the Arbitrator held ten implementation meetings with the Union and HUD and issued a written summary of each meeting. (JA 52-119.) The Arbitrator stated that she would maintain jurisdiction over the award and matters relating to jurisdiction over the award in Summaries 1-10. (JA 52-119.) Although each summary provided that "[n]othing discussed or stated at the meeting should be construed as a new requirement or modification of the existing award," (JA 53, 62, 67, 70, 74, 91, 97, 108, 114, and 119), HUD contended in various exceptions that the Arbitrator exceeded her authority by modifying the award in Summaries 3 and 6. The Authority dismissed HUD's exceptions to Summaries 3 and 6 in *HUD IV* through *HUD VII*. *HUD IV*, 68 FLRA at 631; *HUD V*, 69 FLRA at 60; *HUD VI*, 69 FLRA at 213; *HUD VII*, 70 FLRA at 38.

### B.     Summaries 9 and 10

The Arbitrator continued to hold implementation meetings with the Union and HUD while HUD's exceptions were pending before the Authority. (JA 109-19.) In Summary 9, the Arbitrator noted that HUD had not disclosed whether it requested funding for the Award, and ordered HUD to respond to the Union's requests for funding data within

fourteen days.  (JA 111.)  The Arbitrator also ordered HUD to fully

comply with Summaries 3, 5, and 6 pursuant to *HUD VI* and *HUD VII*.

(JA 112.)  The Arbitrator advised that HUD "should expect to discuss

that implementation at the next [meeting]" and "shall work

cooperatively with the Union and with…this Arbitrator" to do so.  (JA

112.)  Summary 9 further provided that the Arbitrator and parties

agreed "to conduct a formal hearing on the record, with testimony, if

necessary," regarding "all outstanding matters."  (JA 112.)  HUD did

not file any exceptions to Summary 9.

In Summary 10, the Arbitrator stated that "given the current

posture of the case, there is a need for a formal evidentiary hearing so

this Arbitrator can ascertain the status of implementation."  (JA 117-

18.)  HUD timely filed exceptions to Summary 10 under § 7122(a),

contending, *inter alia*, that Summary 10 was contrary to law and

improperly modified the second merits award, which originally "made

no mention of a formal hearing on the record with testimony from

Agency officials compelled by subpoenas."  (JA 25.)

The Authority issued a decision in *HUD VIII* vacating the

Arbitrator's previous awards and Summaries 1 through 10, as well as

its own prior decisions in *HUD I* through *HUD VII* (collectively, "Summaries 1-10"). *HUD VIII*, 70 FLRA at 605. It did so on the ground that the grievances were non-arbitrable.

The Authority found that "[a]t all times . . . the essential nature of this grievance—as demonstrated by the requested remedy–concerned classification." *Id.* at 608. "Therefore, the Authority should have declared this grievance to be non-arbitrable from the outset." *Id.* The Authority found that because it had failed to find the grievance non-arbitrable, "the Arbitrator granted herself continual and indefinite jurisdiction with which she slightly changed the award at every implementation meeting, leaving the Agency unable to ever fully comply." *Id.* The Authority noted that the Arbitrator's lack of jurisdiction over Summary 10 necessarily meant that she also lacked jurisdiction over Summaries 1-9, all of which concerned the same underlying grievance. *Id.* As the Authority had concluded that the Arbitrator had always lacked jurisdiction over the underlying grievances, the Authority set aside the Arbitrator's previous awards as well as the Authority's decisions resolving exceptions to those awards. *Id.*

13

The Union filed for reconsideration of *HUD VIII*, which the Authority denied in *HUD IX*. 71 FLRA at 17. In its request for reconsideration, the Union argued *HUD IX* was *ultra vires* because it vacated "final and binding" arbitration awards. *Id.* 19-20. It also argued that the decision deprived the Union of a property interest without due process. *Id.* at 19-20. In *HUD IX*, the Authority agreed that "the prior arbitration awards and written summaries, with the exclusion of the tenth written summary, were final and binding." *Id.* at 18. However, the Authority found that it "may consider jurisdictional questions even where the merits of an underlying final and binding award are not at issue." *Id.* The Authority also determined that because it would have the ability to decline to enforce Summaries 1-9 upon collateral review of an ULP, "[i]t would be unreasonable, as well as inefficient and ineffective" to wait to do so instead of "address[ing] that question directly now on exceptions." *Id.* The Authority also held that the Union failed to establish a substantive due process violation because it had no legitimate property interest in the prior awards. *Id.* at 19.

### C.     The Union's District Court Case

The Union filed a complaint in District Court asserting the Authority's decisions in *HUD VIII* and *HUD IX* were *ultra vires* under *Leedom* and violated the APA.  (JA 375-92.)  The Authority filed a Motion to Dismiss the complaint for lack of subject matter jurisdiction. (JA 394-426.)  The District Court dismissed the Union's APA claims under Federal Rule of Civil Procedure 12(b)(6), finding that the APA applies "except to the extent that . . . statutes preclude judicial review," and that § 7123(a) precluded judicial review of the Authority's decisions in *HUD VIII* and *HUD IX*.  (JA 544-45.)  The District Court acknowledged in its decision that "the Authority's delegated remedial powers extend to 'the Award' before it" and explicitly did not review the Authority's decision to vacate Summary 10 on the ground that the Arbitrator lacked jurisdiction.  (JA 555.)  However, the District Court determined that to the extent § 7123 limits district court review over Authority orders, it does so by implication, satisfying the first requirement of *Leedom*.  (JA 546-48.)  The District Court then found that to the extent the Authority's decisions vacated final and binding awards that were not before it on exceptions in *HUD VIII* and *HUD IX*,

15

that decision was *ultra vires* and was therefore reviewable by the

District Court under *Leedom*.  (JA 555-56.)

    After the District Court's initial decision, the Union filed a Motion

for Summary Judgment.  (JA 630-59.)  The Authority filed a Motion for

Reconsideration and Cross-Motion for Summary Judgment.  (JA 557-

613.)  The District Court granted the Union's Motion for Summary

Judgment and denied the Authority's Motion for Reconsideration and

Cross-Motion for Summary Judgment.  (JA 822.)  The District Court

found the Authority exceeded its delegated powers when it vacated the

arbitration awards that were not before it on exceptions in *HUD VIII*

and *HUD IX*.  (JA 838.)

## SUMMARY OF THE ARGUMENT

    This Court should reverse the District Court's finding that the

Authority acted in excess of its delegated powers by vacating

Summaries 1-9 and the prior arbitrator's awards.

    District courts may review agency decisions made in excess of the

agency's delegated powers and contrary to a specific, clear, and

mandatory statutory provision.  *Leedom*, 358 U.S. at 188.  In order to

succeed on a *Leedom* claim, a plaintiff must demonstrate that (1) "the

statutory preclusion of review is implied rather than express," (2) "there is no alternative procedure for review of the statutory claim,"[1] and (3) "the agency clearly acts in excess of its delegated powers and contrary to a specific prohibition in the statute that is clear and mandatory." *Nyunt*, 589 F.3d at 449.  The Union failed to satisfy two of these elements.

First, contrary to the District Court's finding, § 7123(a)'s bar on judicial review is express, not implied.  Section 7123, the only provision of the Statute that creates federal court jurisdiction, provides in relevant part:

> Any person aggrieved by any final order of the Authority other than an order under . . . section 7122 of this title (involving an award by an arbitrator) . . . may . . . institute an action for judicial review of the Authority's order . . . .

5 U.S.C. § 7123(a).  The legislative history of § 7123(a) underscores the tight restrictions Congress placed on review of Authority decisions involving an award by an arbitrator.  The conferees discussed judicial review in the following terms: "[T]here will be no judicial review of the

_____

[1] There is no dispute that the Union has exhausted its administrative remedies.

Authority's action on those arbitrators['] awards in grievance cases which are appealable to the Authority."  H.R. Rep. No. 95-1717, at 153 (1978), as reprinted in 1978 U.S.C.C.A.N. 2860, 2887.

Interpreting the text of the Statute and its legislative history, this Court has concluded that § 7123(a) bars judicial review of Authority decisions concerning arbitration awards.  *See Scobey*, 784 F.3d at 823-24.  This Court has specifically found the jurisdictional bar applies not only to courts of appeals, but also to district courts—even when the bar would deprive parties of any judicial review of Authority decisions.  *See Am. Fed'n of Gov't Emps., AFL-CIO v. Loy*, 367 F.3d 932, 935 (D.C. Cir. 2004) (finding that if an FLRA order falls within § 7123(a)'s exceptions to review in the court of appeals, "this does not mean the district courts are open . . . . [i]t means that review is precluded in any court.")

Because there is clear and convincing evidence the Statute's bar on judicial review of Authority decisions concerning arbitrator's awards is express, and not merely implied, this Court should reverse the District Court's finding that it had jurisdiction in this matter.

Second, the Authority's decisions comport with all "clear and mandatory" provisions of the Statute.  Section 7121(c)(5) explicitly

18

provides that matters concerning "the classification of any position" may not be grieved.  In this provision, Congress, "clearly expressed [its] intent to bar grievances over such matters."  Next, § 7122(a) broadly provides that the Authority may take such action "concerning the award as it considers necessary."  5 U.S.C. § 7122(a).  Because the underlying grievance concerned classification, the Authority reasonably set aside the prior awards and Summaries 1-10 in *HUD VIII*.  70 FLRA at 605.  Moreover, although § 7122(b) provides that an arbitration award becomes final and binding when no exceptions are filed, the Statute does not define final and binding, and the provision is not a specific, clear, and mandatory statutory command applicable to the Authority.  *Id.* § 7122(b).

The Authority properly determined the underlying award concerned classification.  *HUD XIII*, 70 FLRA at 605.  As classification matters cannot be grieved, the Authority properly set aside the prior awards and Summaries 1-10 as contrary to law.  Although the District Court took issue with the timing of the Authority's decision to vacate the prior awards and Summaries 1-9, the Authority's actions were reasonable because allowing the prior awards and Summaries 1-9 to

19

stand while vacating Summary 10 would be inefficient and would lead to the same conclusion since the prior awards and Summaries 1-10 all stem from the same underlying grievance concerning classification. Accordingly, the Authority's actions concerning the prior awards and Summaries 1-9 were not erroneous, and even if they were, the error was not sufficiently "extreme" as to constitute a *Leedom* violation.

Based on the foregoing, this Court should reverse and vacate the District Court's decisions and orders.

## STANDARD OF REVIEW

This Court reviews the District Court's legal conclusions regarding subject matter jurisdiction, including a denial of a motion to dismiss, *de novo*. *See Am. Fed'n of Gov't Emps., AFL-CIO v. Trump*, 929 F.3d 748, 754 (D.C. Cir. 2019). This Court reviews the District Court's grant of summary judgment *de novo* as well. *See Woodruff v. Peters,* 482 F.3d 521, 526 (D.C. Cir. 2007). However, to the extent that this Court finds it necessary to construe and apply provisions of the Statute, this Court must defer to the Authority's interpretation of those provisions. *E.g., Bureau of Alcohol, Tobacco, and Firearms v. FLRA,* 464 U.S. 89, 97 (1983).

## ARGUMENT

## I.    The District Court Lacked Jurisdiction to Review the Authority's Decisions

### A.    Section 7123(a) bars all judicial review, including *Leedom* review.

The District Court erred when it determined it had jurisdiction to review the Authority's decisions in *HUD VIII* and *HUD IX*.

The Supreme Court has held that a statute's preclusion of judicial review is express for *Leedom* purposes when there is "clear and convincing evidence" of legislative intent to restrict judicial review. *Bd. of Governors of Fed. Rsrv. Sys. v. MCorp Fin.* ("*MCorp*"), 502 U.S. 32, 44 (1991).[2]   The Statute expressly precludes "judicial review" of "an order under section § 7122 of this title (involving an award by an arbitrator), unless the order involves an [ULP]." 5 U.S.C. § 7123(a)(1).   This Court

---

[2] The District Court found that *MCorp* was irrelevant, as the statute at issue in that case, which states "no court shall have jurisdiction to affect by injunction or otherwise the issuance or enforcement of any [Board] notice or order under this section," contained express language that is lacking in the instant case.  (JA 835.)  However, a statute can be less explicit than the one examined in *MCorp* while still being sufficiently express to preclude judicial review for *Leedom* purposes.  *See U.S. Dep't of Just. v. FLRA*, 981 F.2d 1339, 1342 (D.C. Cir. 1993) ("Not surprisingly, the courts have applied section 7123(a)(1) as written, i.e., to preclude judicial review of an FLRA decision concerning an arbitral award").

has found that "the specific language of § 7123, the structure of the [Statute's] arbitration and review provisions, and the relevant legislative history all provide *clear and convincing* evidence that Congress intended to cut off judicial review of FLRA decisions regarding arbitral awards." *Griffith*, 842 F.2d at 492 (emphasis added). Section 7123(a)(1)'s bar on judicial review of Authority arbitration decisions is thus "express" for *Leedom* purposes. *See U.S. Dep't of Treasury, U.S. Customs Service* ("*Customs Service*"), 43 F.3d 682, 688 (D.C. Cir. 1994).

Importantly, the Statute's bar on "judicial review" in § 7123 expressly precludes all "judicial review," be it in district court or circuit court. *See ACT 2002*, 283 F.3d at 341-42. *ACT 2002* found that it was "manifestly the expressed desire of Congress to create an exclusive statutory scheme" with § 7123, and that "[a]t no point does the [Statute] entitle a party to petition a district court for relief." *Id*. at 342. *ACT 2002* thus found in § 7123(a)(1) "'clear and convincing evidence' of Congressional intent to preclude judicial review"—be it in district court or circuit court. *Id*. at 342.

Legislative history underscores the clarity of Congress's intent to preclude all "judicial review." The Conference Report regarding § 7123

states, "*there will be no judicial review* of the Authority's action on those arbitrators['] awards in grievance cases which are appealable to the Authority."  H.R. Conf. Rep. No. 95-1717, at 153 (1978), as reprinted in 1978 U.S.C.C.A.N. 2860, 2887 (emphasis added).  As this Court noted, "[t]he Report does not say that there will be 'no circuit court review'; *it says there will be 'no judicial review*.'" *ACT 2002*, 283 F.3d at 342 (emphasis added).

Indeed, § 7123(a) expressly precludes all "judicial review" of Authority arbitration decisions; it uses the term "judicial review" not "circuit court review."  The Authority's decisions in *HUD VIII* and *HUD IX* are final orders under § 7122 involving an award by an arbitrator and do not involve any ULP proceeding.  *See HUD VIII*, 70 FLRA at 605; *HUD IX*, 71 FLRA at 17.  Thus, what this Court has recognized as "clear and convincing evidence of Congressional intent to preclude judicial review" bars the Union's *Leedom* claim.  *ACT 2002*, 283 F.3d at 342.

And it is undisputed that the Authority's decisions in *HUD VIII* and *HUD IX* involved arbitration awards.  As noted above, this Court has found that § 7123(a)(1) expressly precludes all judicial review of

23

Authority decisions concerning arbitration awards.   However, the District Court determined the Statute's preclusion of judicial review is "implied rather than express," (JA 548), which was required for the Union to succeed on its claim that the Authority's actions were *ultra vires* under *Leedom*.  *Lepre v. Dep't of Labor*, 275 F.3d 59, 72 (D.C. Cir. 2001).  Because this Court has previously determined that § 7123 expressly precludes all judicial review of Authority decisions involving arbitration awards, the District Court erred when it determined the Statute's preclusion of judicial review was implied.  Accordingly, this Court should overturn the District Court's determination that preclusion of judicial review under the Statute was implied rather than express and that *Leedom* review was appropriate.

**B.    *Griffith*'s limited "constitutional challenges" exception to § 7123(a)'s express preclusion of judicial review does not apply.**

The District Court cited *Griffith* for the proposition that "Congress did not explicitly deny district courts the power to review [Authority] decisions." (JA 547-48.)  However, that proposition is limited to Authority decisions involving a constitutional question.  Indeed, *Griffith* ultimately held that "Congress in § 7123 precluded review of appellant's

non-constitutional claims regarding the Authority's decision," and "the district court correctly concluded that it was without jurisdiction to review the appellant's non-constitutional claims." *Griffith*, 842 F.2d at 494, 501. This Court further clarified *Griffith*'s holding in *Customs Service*, finding that "[t]he *Leedom* exception is premised on the original federal subject matter jurisdiction of the district courts," and that "a claim that the arbitration or FLRA procedures were unconstitutional would have to be brought as a collateral challenge in the district court, as was the case in *Griffith*. The appellate and district courts, then, each have distinct, limited, and exclusive jurisdiction based on the nature of the claim." *Customs Service*, 43 F.3d at 688-89, nn.6, 9. However, the Union did not raise any constitutional claims in its District Court complaint.[3] (JA 375-92.) Thus neither the District Court nor this Court has jurisdiction over this case based on *Griffith*.

Moreover, to the extent that *Griffith*'s dicta that § 7123(a) "leaves the door ajar for review of clear violations of statutory authority under

---

[3] In its request for reconsideration of *HUD VIII*, the Union alleged the Authority's decision deprived grievants of a property interest without substantive due process, which the Authority rejected in *HUD IX*. *HUD IX*, 71 FLRA at 19-20. The Union, however, did not raise that claim in its District Court complaint. (JA 375-92.)

*Leedom*" could also be read to imply an exception to § 7123(a)'s jurisdictional bar for non-constitutional claims, *Scobey* abrogated that exception. In *Griffith*, the plaintiff alleged a *Leedom* violation arising from the Authority's interpretation of the Back Pay Act. In that case, this Court's *Leedom* analysis turned on whether the Authority had violated a "clear and mandatory" provision of the Back Pay Act. *Griffith*, 842 F.2d at 493. In *Scobey*, this Court again considered a party's challenge to an Authority decision that reviewed arbitral awards interpreting the Back Pay Act. 784 F.3d at 823. Contrary to *Griffith*'s dicta that § 7123(a) "leaves the door ajar for review of clear violations of statutory authority under *Leedom*," *Scobey* found that "what Congress intended" was that "there could be no review over the Authority's interpretation of the Back Pay Act no matter how extreme that application was and no matter how gigantic the liability imposed." *Compare Griffith*, 842 F.2d at 490, *with Scobey*, 784 F.3d at 823-24 (emphasis added).[4] In so doing, this Court firmly established that the

---

[4] The District Court notes that *Scobey* does not specifically mention *Leedom v. Kyne*, 358 U.S. 184. (JA 835.) However, *Leedom* is implied when this Court reviewed whether "the Authority *exceeded its jurisdiction*" in the interpretation of the Back Pay Act. *Scobey*, 784 F.3d

only exceptions to § 7123(a)'s bar on judicial review remaining under

*Griffith* are "constitutional challenges"—challenges that the Union has

not raised.  That narrow exception to § 7123(a)'s express bar on judicial

review thus does not apply here.  As § 7123(a)'s preclusion of judicial

review is express and not implied and the instant case does not raise

any constitutional challenges within the limited exception outlined in

*Griffith*, the Union's *Leedom* claim must fail.

## II.    The Authority's Decisions Were Within Its Statutorily-Delegated Powers Under § 7122(a)

The District Court erred in finding that the Authority acted in a

manner that was contrary to a specific prohibition of the Statute that

was clear and mandatory.  (JA 548-56.)  The District Court's decisions

were based on the conclusion that an action can concern only one

award, the award immediately before the Authority on § 7122(a) review.

(JA 552.)  But a single action by the Authority may concern multiple

---

at 823.  Because *Scobey* did not involve a constitutional issue and this
Court determined it could not review the Authority's interpretation of
the Back Pay Act, it logically follows that the only exception to the
express preclusion of judicial review is when a constitutional matter is
raised.

awards at once, particularly where, as here, the awards stem from a series of evolving and interrelated decisions.

In *HUD VIII*, the Authority took two "actions" concerning Summary 10 that it considered necessary and appropriate: (1) it determined the underlying grievance was not arbitrable because it was about classification; and (2) it vacated the Arbitrator's prior awards and Summaries 1 through 10, as well as its own decisions in *HUD I* through *HUD VII*. *HUD VIII*, 70 FLRA at 608. Both actions "concern[ed]" Summary 10 and resolved HUD's exceptions to Summary 10, and both were actions that the Authority considered "necessary." 5 U.S.C. § 7122(a). Therefore, the Authority's decisions in *HUD VIII* and *HUD IX* were within its statutorily-delegated powers in accordance with § 7122(a). Additionally, the Authority's decision to vacate Summaries 1-9 was a necessary predicate act of its decision to vacate Summary 10. For these reasons, the Authority's decisions were actions "concerning" the award properly before it under § 7122(a), and the Union's *Leedom* claim must fail.

28

A.    **The Statute grants the Authority broad powers to take such actions as the Authority deems necessary.**

The Statute affirmatively delegated power to the Authority to render its decisions in *HUD VIII* and *HUD IX* in multiple provisions. As a jurisdictional matter, § 7121(c)(5) provides that "the classification of any position" is not arbitrable under the Statute. Section 7105(a)(2)(H) grants the Authority power to "resolve exceptions to arbitrator's awards under section 7122." If the Authority finds the award is deficient, "the Authority may take such action . . . concerning the award as it considers necessary." *Id.* § 7122(a).

Section 7122(a)'s language that "the Authority may take such action . . . concerning the award as it considers necessary" grants the Authority broad discretionary power. "May take" is discretionary and permissive. *See Lopez v. Davis*, 531 U.S. 230, 241 (2001) ("Congress' use of the permissive may . . . contrasts with the use of a mandatory shall" (internal quotation omitted)). Likewise, "as [the Authority] considers necessary" is a phrase that "fairly exudes deference" to the Authority, and "does substantially restrict the authority of the reviewing court." *See Kreis v. Sec'y of Air Force*, 866 F.2d 1508, 1514 (D.C. Cir. 1989). In *Kreis*, the D.C. Circuit interpreted a statutory

29

provision stating that the Secretary of the Air Force "may correct any military record of that department when he considers it necessary" as distinctly discretionary, in contrast to "when such action is necessary." *Id*. at 1513. This Court found in *Kreis* that "[t]he statutory provisions at issue here draw a similar distinction between the objective existence of certain conditions and the Secretary's determination that such conditions are present," which warranted "an unusually deferential" review. *Id*. at 1514. Here, as in *Lopez* and *Kreis*, § 7122(a) provides that "the Authority *may take* such action . . . concerning the award *as it considers necessary*." Far from being a "clear and mandatory prohibition" against the Authority taking certain actions, this expansive language grants the Authority broad discretion to take actions like those at issue here.

### B. Finding that the underlying grievance concerned classification and was not arbitrable was an "action . . . concerning" Summary 10 under § 7122(a).

The Authority undisputedly had the power under § 7122(a) to find that the underlying grievance was not arbitrable in Summary 10, the most recent award. The District Court acknowledged that "the Authority's delegated remedial powers extended to 'the Award' before

30

it," and explicitly did not review the Authority's decision to vacate Summary 10 on the ground that the Arbitrator lacked jurisdiction. (JA 555.) Additionally, the Union did not argue in its District Court brief that the Authority violated the Statute by reviewing and vacating Summary 10. (JA 430, 630.) The Authority's determination of non-arbitrability was thus an action within its statutorily delegated powers. As vacating Summary 10 was also undoubtedly an "action" concerning Summary 10, the Authority's decision to also vacate the prior awards and decisions is the only "action" in *HUD VIII* remaining in question. "Concerning" means "relating to," and is the equivalent of "regarding, respecting, about." *Lamar, Archer & Cofrin, LLP v. Appling* ("*Appling*"), 138 S. Ct. 1752, 1759 (2018). In *Appling*, the Supreme Court held that a statutory provision covering "statement[s] respecting the debtor's financial position" could also apply to a statement about a single asset, based on an expansive reading of the word "respecting." *Id*. at 1757. The Supreme Court found that "concerning," "related to," and "respecting," were equivalent terms, which "in a legal context generally ha[ve] a broadening effect, ensuring the scope of a provision

31

covers not only its subject but also matters relating to that subject." *Id.*
at 1759-60.

Like the statute at issue in *Appling*, the Statute here describes a
category of things using an expansive term: "such action . . . *concerning*
the award." 5 U.S.C. § 7122(a) (emphasis added). In *Appling*, the
petitioner argued that a "statement respecting the debtor's financial
condition" (1) was only a statement that captured "the debtor's overall
financial state" and (2) excluded statements about single assets—even
though such statements were also relevant to the debtor's financial
condition. *Appling*, 138 S. Ct. at 1761. Like the petitioner in *Appling*,
the Union advanced in its District Court brief an interpretation of §
7122(a) that narrowly construes the expansive term "concerning" to
mean (1) only actions "concerning the award" immediately before the
Authority and (2) excluding actions concerning other awards—even
though such actions were also relevant to the award at issue. (JA 650-
52.) The District Court agreed with the Union's interpretation. (JA
836.) However, the Supreme Court explicitly rejected this
interpretation of the law at issue in *Appling*: "given the ordinary
meaning of 'respecting," [petitioner]'s preferred statutory construction .

32

. . must be rejected, for it reads 'respecting' out of the statute." *Id.* at 1761.

Similarly, § 7122(a) expressly allows the Authority to take such action "concerning" a given award that it deems necessary. The fact that the Authority's chosen action may also concern *other* awards does not defeat that explicit statutory authorization. Just as statements about single assets may also be statements "respecting" a debtor's overall financial position, the Authority's action vacating Summaries 1-9 "concern" Summary 10. After all, those Summaries: (1) arose from the *same grievance* between the *same parties* in the *same arbitration*, (2) sought to implement the *same remedy*, and (3) suffered from *the same jurisdictional flaw* as Summary 10.

Even assuming *arguendo* that the Statute was silent on whether actions "concerning the award" may include actions that concern other awards, the silence would weigh meaningfully in the Authority's favor. In *Appling*, the Supreme Court found that "[h]ad Congress intended [the law in that case] to encompass only statements expressing the balance of a debtor's assets and liabilities, there are several ways in which it could have so specified, *e.g.*, 'statement disclosing the debtor's

financial condition' or 'statement of the debtor's financial condition.' *But Congress did not use such narrow language*." *Id.* at 1761 (emphasis added). Indeed, "Congress knows to speak in plain terms when it wishes to circumscribe, and in capacious terms when it wishes to enlarge, agency discretion." *City of Arlington, Tex. v. FCC*, 569 U.S. 290, 296 (2013).

Here, Congress did not circumscribe the Authority's discretion by granting it power to take "such actions concerning only the award." Such phrasing would clearly narrow the Authority's delegated powers by limiting it to actions concerning *only* the award at issue. Nor did Congress circumscribe the Authority's discretion by specifying what "such actions" might entail—such as specifying that the Authority "may *vacate*, *modify*, or *remand* the award." That phrasing would unambiguously narrow the Authority's delegated powers by explicitly limiting them to specific kinds of actions applicable to only one award.

The plain language of § 7122(a) granted the Authority the broad discretionary power to vacate Summaries 1-9 because such actions "concerned" Summary 10 and were a necessary and logical consequence of the Authority's ruling regarding Summary 10. The Authority

34

determined, reasonably, that "the central question in this case always has been whether the underlying grievance concerns classification and is therefore not arbitrable under § 7121(c)(5)." *HUD VIII*, 70 FLRA at 607. Given the Authority's finding that "this grievance *always concerned classification*," its decision to vacate previous awards arising from that same, non-arbitrable grievance that the Arbitrator also lacked jurisdiction to issue logically followed. *Id*. at 608 (emphasis added).

### C. Vacating Summaries 1-9 was a necessary predicate act for the Authority's permissible action "concerning" Summary 10.

Even assuming *arguendo* that vacating Summaries 1-9 was not an action "concerning" Summary 10, § 7122(a) would still grant the Authority the power to do so as a necessary predicate of the Authority's decision that the underlying grievance was not arbitrable.

The Statute's declaration that the Authority "may take such action . . . concerning the award as it considers necessary" also authorizes the Authority to take any necessary predicate acts. *See Luis v. United States*, 136 S. Ct. 1083, 1097 (2016) (Thomas, J., concurring) ("Authorization of an act also authorizes a necessary predicate act.")

(internal citations omitted).  Under the predicate act canon, "where a general power is conferred or duty enjoined, every particular power necessary for the exercise of the one, or the performance of the other, is also conferred."  *Id.*  For example, it has long been held that "[t]he power to reconsider is inherent in the power to decide."  *Tokyo Kikai Seisakusho, Ltd. v. United States*, 529 F.3d 1352, 1360 (Fed. Cir. 2008).  Thus, "the courts have uniformly concluded that administrative agencies possess inherent authority to reconsider their decisions, subject to certain limitations, regardless of whether they possess explicit statutory authority to do so."  *Id.*

The District Court agreed that "the Authority's delegated remedial powers extended to 'the Award' before it," and refrained from reviewing the Authority's decision to vacate Summary 10.  (JA 555.)  However, the District Court determined the Authority exceeded its authority by vacating Summaries 1-9 on the basis that the Authority's actions concerned those awards, not the Summary 10 award before the Authority.  (JA 555-56.)  But the Authority could not fully render its decision without the predicate act of vacating Summaries 1-9, because Summaries 1-9 left several major issues unresolved.

36

In Summary 9, the Arbitrator ordered HUD to respond to the
Union's requests for funding data within fourteen days; to fully comply
with Summaries 3, 5, and 6; "to discuss implementation at the next
[meeting];" to "work cooperatively with the Union and with the
oversight of this Arbitrator" in implementation; and "to conduct a
formal hearing on the record" regarding "all outstanding matters." (JA
110-13.) To vacate only Summary 10 while keeping Summary 9 "final
and binding" would leave all of those requirements in place. If
subsequent proceedings following Summary 9 resulted in "any
arbitrator's award"—including summaries of implementation meetings
not styled as "awards"—then the Authority would also have the
statutory authority to review those awards for jurisdictional
deficiencies.

But this would be a futile exercise. The Authority has long held
that arbitrations concerning classification matters are "proceeding[s]
that [are] barred by the Statute from occurring in the first place." *U.S.
Dep't of Agric. Food & Consumer Serv. Dall., Tex.* ("*USDA*"), 60 FLRA
978, 981 (2005). Arbitrators "have no authority" to rule on grievances
involving classification, as such matters "are mandatorily excluded from

37

the scope of negotiated grievance procedures." *Id*. The Authority has already determined that the underlying grievance is about classification and thus not arbitrable. *HUD VIII*, 70 FLRA at 607-08. Doing so was within its powers. *See id*.

Even if the Authority's determination of non-arbitrability could not retroactively apply to Summaries 1-9, the decision must at least prospectively apply to any subsequent awards or proceedings. 5 U.S.C. § 7122(a). That is because the underlying grievance has not changed from Summary 9 to 10—so the Arbitrator lacks jurisdiction over any subsequent awards or proceedings flowing from that grievance. *See HUD VIII*, 70 FLRA at 607-08; *HUD IX*, 71 FLRA 18-19. Thus, any award issued pursuant to Summary 9 would retrace the steps of Summary 10, and be vacated on the same grounds. Courts have declined to force the Authority to engage in futile exercises where the outcome is already a foregone conclusion. *See Am. Fed'n of Gov't Emps., AFL-CIO v. FLRA*, 778 F.2d 850, 862 n. 19 (D.C. Cir. 1985) ("[R]emand for further articulation would be futile since the outcome of that question follows automatically from the Authority's determination that

38

the head of an agency has the right under § 7114(c) to negate a term imposed by the Impasses Panel.").

For these reasons, the Authority's decision to vacate *HUD I* through *HUD VII* and Summaries 1-9 were actions "concerning" the award properly before it under § 7122(a), and the Union's *Leedom* claim must fail. Accordingly, this Court should overturn the District Court's finding that the Authority exceeded its authority concerning its actions related to *HUD I* through *HUD VII* and Summaries 1-9.

## III. The Authority's Decisions Do Not Run Afoul of any Specific Affirmative Command in § 7122

### A. The Authority's decisions are not contrary to a specific prohibition in the Statute that is clear and mandatory.

The District Court erred in finding that the Authority acted in a manner that was contrary to a specific prohibition of the Statute that was clear and mandatory. (JA 548-56.) The District Court's decisions rest on language in § 7122(b) that if no exception is filed, the award shall be "final and binding." (JA 550.) However, in reaching its holding, the District Court did not analyze case law finding the words "final" and "binding" to be ambiguous. (JA 548-56.) Final is not clear, because it is ambiguous whether "finality" refers to finality of the

exceptions process, finality of arbitration, finality of administrative procedure, or finality of judicial review.  Additionally, the District Court did not consider the ordinary usage of "binding" in the context of the Statute and collective bargaining norms: arbitration awards generally bind *parties*, not *the Authority*.  (JA 537-56.)  "Binding" is thus ambiguous as to who will be bound: the parties to an arbitration, the arbitrator, or the Authority.  The District Court also did not examine how the Supreme Court and the D.C. Circuit have interpreted the phrase "final and binding" in other legal contexts.  (JA 537-56.)  From those cases, it is readily apparent that there is no consensus on what, if any, preclusive effect "final and binding" status has in a given situation, let alone in this context.  Thus, the phrase "final and binding" is not "clear and unambiguous."

Similarly, § 7122(a)'s grant of power to take necessary actions "concerning the award" is not a "clear and mandatory" negative prohibition because it does not speak on actions concerning more than one award.[5]  Interpreting § 7122(a) to authorize only actions that

---

[5] The District Court found that § 7122(a)'s grant of power to take actions "concerning…the award" expressly precluded the Authority from taking

40

concern one award at a time would render § 7122(a) meaningless by drastically narrowing the Authority's ability to take actions concerning awards that are deficient.  For these reasons, § 7122(b)'s statement that the award shall be "final and binding" is not sufficiently "clear and mandatory" to create either a negative prohibition or an affirmative command under *Leedom*.

### B.    "Final" is not clear because it is not clear what effect finality has on subsequent proceedings.

The District Court erred in holding that § 7122(b)'s command that "the award shall be final" is a "clear and mandatory" affirmative command, (JA 550), because the word "final" is ambiguous.  *See Shaughnessy v. Pedreiro*, 349 U.S. 48, 51 (1955).  Further, other uses of the term "final" in the Statute confirm that the term does not have a

---

actions concerning any other awards.  (JA 549-50.)  But similar to § 7122(a), the Statute expressly authorized only one kind of thing: judicial review in the courts of appeals for Authority orders not involving arbitration awards.  § 7123(a).  To the extent the Statute's express authorization of action "concerning . . . the award" is also an express prohibition of action concerning other awards, so too must the Statute's express authorization of judicial review in the courts of appeals constitute an express prohibition of judicial review in any other court.  And if § 7123(a) bars judicial review in the district courts only implicitly, then any prohibition in § 7122 against the Authority's decisions concerning Summaries 1-9 is, at most, implicit, and certainly not clear and mandatory.

"clear and mandatory" meaning that would preclude the Authority's action in vacating Summaries 1-9.

The "normal presumption" is that "when Congress uses a term in multiple places within a single statute, the term bears a consistent meaning throughout." *Azar v. Allina Health Servs.*, 139 S. Ct. 1804, 1812 (2019). Within § 7122(b), the term "final" is used twice. First, if no exception is filed, "the award shall be *final* and binding." 5 U.S.C. § 7122(b) (emphasis added). Second, "[a]n agency shall take actions required by an arbitrator's *final* award." *Id.* (emphasis added).

The most likely meaning of "the award shall be final" in § 7122(b) is simply that it refers to finality of the exceptions process, without implicating finality in its everyday usage, finality in arbitration, finality in administrative review, or finality in judicial review. That is, "final" only indicates the award's status for the purpose of determining when an agency must begin complying with the award as a logistical matter. *See NTEU 2004*, 392 F.3d at 500 (holding that the "filing period [for a ULP charge] cannot begin until there has been a failure to comply with an arbitration award"). When an arbitrator issues an award, it is possible either party will file an exception and the Authority may

42

modify the award in its review under § 7122(a).  Congress meant to require agencies to take the actions required by an arbitrator's final award where no exceptions were filed, but only after the 30-day exceptions-filing period elapsed.  *See* 5 U.S.C. § 7122(b).

This definition of "final" harmonizes with several other situations, discussed below, where the Statute provides that "final" awards may be overruled or vacated.  It allows parties to renegotiate the terms of a "final" award in the same arbitration proceeding, before the same arbitrator, as the Union and HUD did here for several years.  It would not preclude administrative or judicial review in the other limited circumstances allowed under the Statute.  And it would allow the Authority to vacate prior awards upon discovering serious jurisdictional defects in its review of a later award arising from the same grievance, as it did here.

Giving "final" its everyday meaning would be untenable.  For example, although "in everyday usage, a decision's finality does not depend on subsequent re-transmittal," *Impact Energy Resources, LLC v. Salazar,* 693 F.3d 1239, 1251 (10th Cir. 2012), "final" in § 7122(b) cannot be limited to its everyday usage because the Statute allows the

same award to become "final" twice. There are multiple ways an

arbitrator's award can become "final" for the purpose of triggering

§ 7122(b)'s latter finality clause, requiring an agency to "take actions

required by an arbitrator's final award." For example, if an arbitrator

issues an award regarding a grievance alleging a prohibited personnel

practice, that award becomes "final" under § 7122(b) if no exceptions are

filed. However, in certain circumstances, an aggrieved employee may

seek discretionary Federal Circuit review of the "final" arbitration

award. 5 U.S.C. § 7121(f). In those cases, this Court has determined

the award in question becomes "final" again for the purposes of

§ 7122(b)'s latter finality clause "when the Federal Circuit denies

review." *Dep't of Health & Hum. Servs., Soc. Sec. Admin. v. FLRA*, 976

*F.2d 1409*, 1414 (D.C. Cir. 1992). The everyday usage of "final" would

surely exclude any definition that allows for "finality" to happen twice,

but that is exactly what § 7122(b) and § 7121(f) allow. Thus, "final" in

§7122(b) has to mean something other than its everyday usage.

"The award shall be final" also does not refer to *finality in*

*administrative or judicial review*, because the Statute explicitly

provides for administrative and judicial review of "final" arbitration

44

awards.  Section 7121(d) provides that in certain circumstances, aggrieved employees may petition "the Merit Systems Protection Board ["MSPB"] to review the *final* decision" of an arbitrator.  5 U.S.C. § 7121(d) (emphasis added); *see also Morales v. Soc. Sec. Admin.*, 107 M.S.P.R. 360, 2007 WL 4248525 (Dec. 4, 2007) (reversing and remanding arbitrator's final decision for legal error under § 7121(d)).  Not only that, after the MSPB reviews the "final" arbitration award, the aggrieved employee can appeal the MSPB's decision again to the Federal Circuit.  *See*, *e.g.*, *Herrera v. Dep't of Homeland Sec.*, 498 F. App'x 35, 39 (Fed. Cir. 2012) (holding that the MSPB "properly exercised jurisdiction to review the arbitration decision under § 7121(d)" and affirming the MSPB's decision); *Buffkin v. Dep't of Def.*, 957 F.3d 1327, 1328 (Fed. Cir. 2020) (vacating and remanding arbitrator's final decision under § 7121(f)).  Additionally, judicial review is available for arbitration awards involving ULPs under § 7123(a)(1).  "Finality" under § 7121(d) is thus not a bar to subsequent administrative or judicial review.

And lastly, "final" in § 7122(b) could not mean finality in all of the Authority's administrative procedures, with preclusive effects on all

future Authority actions.  Under this interpretation, the Authority

could never take any actions that would have any substantive effect on

any arbitration award which was "final" under § 7122(b).  That is

because doing so would violate the affirmative statutory command of

finality, no matter how legitimate the Authority's actions may

otherwise be under the Statute.  This definition of "final" would be

absurd, given that "final" awards may, and indeed often do, conflict

with each other.  This definition would also contradict the other

portions of the Statute and decades of Authority, MSPB, and Federal

Circuit precedent providing mechanisms for overturning and vacating

"final" arbitration awards.  *See e.g. Morales*, 107 M.S.P.R. at 360;

*Buffkin*, F.3d at 1328.  Indeed, this reading of "final" would deprive the

Union of the very relief it seeks here, because the awards that the

Union seeks to restore would *also* be invalid under this definition.  In

Summaries 1-10, the Arbitrator issued awards that modified the

original "final" second merits award. (JA 52-119.)  The Union did not

contend that § 7122(b) precluded the Arbitrator from issuing such

awards, although the second merits award was "final."  (JA 156-94.)

46

Given the many potential meanings of "final," the Authority did not violate a "clear and mandatory" "specific affirmative command" of the Statute in vacating Summaries 1-9.

### C.    "Binding" is unclear because who is bound is ambiguous.

Section 7122(b)'s affirmative statutory command that "the award shall be . . . binding" is also not clear and unambiguous, because it does not identify the entity *on whom* the award shall be "binding." Specifically, it is not clear whether awards are binding only upon the parties, or on the Authority too. Thus, the Union cannot demonstrate the Authority violated a "clear and mandatory obligation" under *Leedom*.

Indeed, the language of § 7122(b) regarding the finality of an award imposes specific, clear, and mandatory obligations upon *an agency*, not the Authority: "the award shall be final and binding. An agency shall take the actions required by an arbitrator's final award." 5 U.S.C. § 7122(b). The most natural reading of these clauses is that the second sentence, "An agency shall take the actions required by an arbitrator's final award" explains the consequence of the first sentence, that "the award shall be final and binding." *See id*. That is because in

47

the context of an arbitrator's award, "final and binding" typically applies to the *parties*, not to the Authority (or other administrative body or court) reviewing the arbitration.

While § 7122(b) does not explicitly state on whom the award shall be "binding," the Statute uses "binding" to refer to binding only the parties in every other context in which the word appears. Again, it is a "normal rule of statutory construction that identical words used in different parts of the same act are intended to have the same meaning." *Comm'r of Internal Revenue v. Lundy*, 516 U.S. 235, 250 (1996). Section 7121(b)(1)(C)(iii) states that grievances "not satisfactorily settled under the negotiated grievance procedure shall be subject to binding arbitration which may be invoked by either the exclusive representative or the agency." 5 U.S.C. § 7121(b)(1)(C)(iii). Section 7114(c)(3) of the Statute also provides that following a 30-day period for agency head review of a CBA, the agreement "shall be binding *on the agency and the exclusive representative*." *Id.* § 7114(c)(3). Therefore, "binding" under the Statute does not specifically bind *the Authority* in any other context.

Other statutory provisions support this conclusion. Negotiated grievance procedures exist only within the confines of a CBA. *Id.*

48

§ 7121(a)(1). Agencies and an exclusive representative of employees are parties to CBAs—not the Authority. *Id*. §§ 7103(a)(8); 7103(a)(12). The Authority cannot file a grievance, nor be a party to any arbitration invoked under a negotiated grievance procedure. *Id*. § 7103(a)(9). And an arbitration cannot bind parties not involved in the arbitration, as "[i]t goes without saying that a contract cannot bind a nonparty." *EEOC v. Waffle House, Inc*., 534 U.S. 279, 294 (2002) (employment contract's provision that "any dispute or claim" would be "settled by binding arbitration" did not bind the Equal Employment Opportunity Commission, a nonparty, from pursuing enforcement actions on an employee's behalf).

For these reasons, interpreting § 7122(b) to mean "the award shall be final and binding [upon the parties and upon the Authority]" is not a "clear or mandatory" "command" under *Leedom* and is unsupported by other language in the Statute.

**D. "Final and binding" is not clear or mandatory because it is ambiguous what preclusive effect "final and binding" status has, and on whom.**

It is also not clear whether, when, and to what extent the statutory terms "final and binding" have any preclusive effects. The

Authority has held that § 7122(b) does not preclude arbitrators from issuing decisions that explicitly disregard factual findings set forth in previous "final and binding" arbitration awards, even those involving the same parties and the same factual circumstances. In *American Federation of Government Employees Local 3615* ("*Local 3615*"), a union filed exceptions to an arbitration award in part because the award explicitly disregarded factual findings set forth in a previous "final and binding" arbitration award between the same parties regarding the same agency policy. 54 FLRA 494, 498 (1998). But the Authority determined "the Arbitrator was not bound by an award resolving another dispute. Arbitration awards are not precedential and, consequently, a contention that an award conflicts with other arbitration awards provides no basis for finding an award deficient under the Statute." *Id*. at 499. While the prior award in *Local 3615* was "final and binding" under § 7122(b), that "final and binding" status did not—and could not—prevent the new arbitrator from reaching a different factual conclusion from the prior arbitrator, and issuing an award which conflicted with the prior award. *Id*. If the new arbitrator in *Local 3615* could overrule the factual findings of a "final and binding"

arbitration award, so too could the Authority, with its broad discretionary powers.

The Authority may vacate "final and binding" arbitration awards on collateral review in ULP proceedings "challeng[ing] the arbitrator's very jurisdiction." *See e.g. Am. Fed'n of Gov't Emps., AFL-CIO v. FLRA* ("*AFGE 1988*"), 850 F.2d 782, 785 (D.C. Cir. 1988); *Nicholson*, 475 F.3d at 352. Like Summaries 1-9, the awards at issue in *AFGE 1988* and *Nicholson* were "final and binding" under § 7122(b). *AFGE 1988*, 850 F.2d at 785; *Nicholson*, 475 F.3d at 352. Nevertheless, the D.C. Circuit upheld the Authority's decision not to enforce those awards in subsequent ULP proceedings. As the Statute explicitly grants the Authority the power to decline to be bound by "final and binding" decisions on collateral review in ULP proceedings, the Authority's decision to vacate "final and binding" arbitration awards simply relies on that pre-existing explicit statutory power. *See HUD IX*, 71 FLRA at 18 ("As with ULPs, the Authority may reach into the merits of final and binding awards when a jurisdictional question is present.").

In *HUD IX*, the Authority acknowledged the procedural differences between *AFGE 1988*, *Nicholson*, and the instant case, but

found that "[i]t would be unreasonable, as well as inefficient and ineffective, for the Authority to consider such jurisdictional questions on final and binding awards only after a ULP complaint has been filed but be unable to address that question directly now on exceptions." *Id.* In support, it cited specific statutory authority: the Statute's broad command that its provisions "should be interpreted in a manner consistent with the requirement of an effective and efficient [g]overnment." *Id.* at 20 n.22 (quoting § 7101(b)); *cf. Ass'n of Admin. L. Judges v. FLRA*, 397 F.3d 957, 962 (D.C. Cir. 2005) ("Congress took the unusual step of prescribing a practical and flexible rule of construction—to wit, the Statute 'should be interpreted in a manner consistent with the requirement of an effective and efficient Government.'—that clearly invites the Authority to exercise its judgment") (citation omitted).

The procedural differences between *AFGE 1988*, *Nicholson*, and this case do not bear on the ultimate question of whether the Authority arguably had the power to vacate previous arbitration awards issued in the course of the same arbitration that suffered from the same jurisdictional defect as Summary 10. *See Jordan Hosp. v. Leavitt*, 571

52

F. Supp. 2d 108, 117 (D.D.C. 2008) (rejecting "attempts to expand
*Leedom* jurisdiction to situations where the agency has arguably taken
too expansive an interpretation of a governing statute").  In light of the
breadth of the Authority's power to "take such action and make such
recommendations concerning the award as it considers necessary"
under § 7122(a) and to interpret the Statute's provisions "consistent
with the requirement of an effective and efficient Government" under
§ 7101(b), *AFGE 1988* and *Nicholson* surely provided the Authority
with at least an arguable basis for vacating Summaries 1-9 given its
finding that the Arbitrator never had jurisdiction to issue those awards.

**E.**  **The Statute's grant of power to take necessary actions "concerning the award" under § 7122(a) is not a "clear and mandatory" negative prohibition against taking actions concerning more than one award.**

The District Court erred in determining the Statute's grant of
power to take necessary actions "concerning the award" is a "clear and
mandatory" negative prohibition against taking actions that may
concern multiple awards at once.

The District Court relied on *Railway Labor Executives' Association
v. National Mediation Board* ("*RLEA*"), 29 F.3d 655, 662 (D.C. Cir.
1994) when making its determination that "concerning the award"

meant the Authority could only make decisions regarding the award

before it. (JA 551.) In *RLEA*, the D.C. Circuit found the National

Railroad Adjustment Board ("NRAB") exceeded its authority under

*Leedom* when it interpreted a provision of the Railway Labor Act

("RLA") allowing the NRAB to investigate representation disputes

"upon request of either party to the dispute" to also allow the NRAB to

investigate representation disputes pursuant to a request from a non-

party. *RLEA*, 29 F.3d at 665. The D.C. Circuit found that the RLA's

explicit authorization of investigations "upon request of either party"

created a specific negative prohibition against investigations requested

by non-parties. *Id.* As in *RLEA*, the Statute here explicitly authorizes

one category of thing: actions "concerning the award."

However, the key distinction between these cases is *RLEA* did not

address whether an implied statutory exclusion applied where the

actions challenged were *also* raised in accordance with the relevant

statute's *explicit authorization.* A more analogous situation would have

been if, in *RLEA*, the NRAB had investigated a dispute pursuant to

requests from both a party and a non-party. There, it would have been

incorrect to say the NRAB had exceeded its authority despite the

54

Railway Labor Act's explicit authorization of investigations requested by a party, simply because a non-party also made the same request.

Here, unlike in *RLEA*, the Authority's challenged actions in vacating Summaries 1-9 are intertwined with actions the Statute expressly authorizes: determining the underlying grievance was not arbitrable and vacating Summary 10. The Authority's actions concerning Summary 10 are not rendered *ultra vires* simply because those actions may also have concerned Summaries 1-9. The Authority thus acted pursuant to the Statute's explicit authorization, distinguishing it from RLEA. As the Statute is silent on whether the explicit authorization of actions in § 7122(a) come with any corollary limitations related to "final and binding" prior awards, § 7122(a) falls short of *Leedom*'s requirement of a clear statutory mandate.

To say that § 7122(a)'s qualifying language—that the Authority may take "such action . . . concerning the award" before it—actively excludes actions that may also concern any other award ever to become "final and binding" under § 7122(b) risks rendering § 7122(a) meaningless. Disputes arising under the Statute commonly result in multiple "awards" issued over the course of many years. *See e.g. Fed.*

*Educ. Ass'n v. FLRA*, 927 F.3d 514, 516 (D.C. Cir. 2019) (four arbitrator awards issued over 13 years); *U.S. Dep't of Def. Educ. Activity, U.S. Dep't of Def. Dependent Schs.*, 70 FLRA 84, 84-85 (2016) (record spans "five years, four awards, and one Authority decision"); *U.S. Dep't of Interior, U.S. Park Police*, 67 FLRA 345, 345 (2014) (factual background includes "four arbitration awards, a previous Authority decision, and a denial of a request for reconsideration of that decision.").

It naturally follows that some of these awards may raise issues concerning, or in conflict with, other "final and binding" prior awards. Precluding the Authority from taking actions that conflict with any previous awards would punish parties for not catching mistakes by forcing them to remain bound by illegal awards. This would severely undermine the Statute's broad delegation of power to the Authority to take such action "as it considers necessary" to ensure that awards are not "contrary to any law, rule, or regulation." § 7122(a). It would also make it *ultra vires* for the Authority to attempt to correct mistakes if and when the parties discover them and file exceptions—even if the Authority's action concerns at least one timely reviewable award.

## IV.  Any Authority Error was not Sufficiently "Extreme" to Constitute a *Leedom* Violation

The District Court erred in finding the Authority's decisions were the kind of extreme error required under *Leedom*.  *Nyunt*, 589 F.3d at 449; (JA 556.)  *Leedom* jurisdiction can only be established by showing: (1) that the FLRA has acted contrary to a specific prohibition in [the Statute] which was clear and mandatory," and (2) "barring district court review would . . . wholly deprive the union of a meaningful and adequate means of vindicating its statutory rights."  *Nat'l Air Traffic Controllers Ass'n AFL-CIO v. FSIP*, 437 F.3d 1256, 1263 (D.C. Cir. 2006).

"Garden-variety errors" "in the nature of a factual dispute or a mixed question of law and fact" are insufficient to meet this high burden.  *See Lepre*, 275 F.3d at 74.  The District Court recognized "the difficulty the Authority faced in trying to resolve a dispute that had been pending for a decade and a half."  (JA 555.)  Although the District Court took issue with the timing of the Authority's decision to vacate the prior awards and Summaries 1-9, (JA 549), the Authority has found that it may address § 7121(c)(5) jurisdictional issues *sua sponte* and even when no exceptions were filed on the jurisdictional issue.  *Off. and*

57

*Prof. Emps. Int'l Union Loc. 2001*, 62 FLRA 67, 69 (2007); *U.S. Dep't of the Army, Fort Polk, La.*, 61 FLRA 8, 12 (2005).  Moreover, the District Court did not analyze how the Authority could have correctly resolved this matter while adhering to its reasonable finding that the underlying grievance was non-arbitrable.  (JA 537-556; 823- 839.)  Allowing Summaries 1-9 to stand while vacating Summary 10 because the Arbitrator lacked jurisdiction would have left the parties in legal limbo and forced unnecessarily wasteful arbitral proceedings that are "barred by the Statute from occurring in the first place."  *USDA*, 60 FLRA at 981.  Any Authority errors were attempts to avoid that result.

The District Court's finding of any errors about the scope of the Authority's power to vacate prior awards arose from the Arbitrator's styling of new awards as written summaries of implementation meetings.  Therefore, any errors the District Court found were not extreme enough to warrant the exercise of *Leedom* jurisdiction.  For example, the District Court determined the Authority erred when it decided that vacating Summaries 1-9 was an action "concerning" Summary 10.  (JA 555-56.)  However, if determining that vacating Summaries 1-9 "concerned" Summary 10 was an error on the

Authority's part, it was a line-drawing error that any reasonable decision-maker might make. The Arbitrator's assertion of perpetual jurisdiction over the matter created substantial difficulties in defining the contours of each individual "award" relative to subsequent implementation meetings, and relative to the proceeding as a whole. *HUD VIII*, 70 FLRA at 608. While the Union consistently denied that each Summary had modified the original second merits award, the incremental evolution of implementation directives styled as "clarifications" made it difficult for even the parties to identify modifications as they occurred. *Id*.

Similarly, any errors the District Court found when the Authority determined what remedies should flow from its finding of non-arbitrability were also reasonable in light of the logistical challenges of parsing out Summary 10 from prior awards. For example, the District Court found the Authority erred in determining that vacating Summaries 1-9 and *HUD I* through *HUD VII* was the correct remedy. (JA 549) ("If the timing and scope of its Order were different, the Authority might be right" that "even if it erred when it concluded that the arbitrator lacked jurisdiction . . . that error would be no more than a

59

'garden-variety error of law or fact.'").  However, even if the Authority had not vacated Summaries 1-9, it would have reached functionally the same outcome.  Vacating only Summary 10 and leaving Summaries 1-9 in place would have reset the proceedings back to how they stood immediately after Summary 9—with several major implementation issues left unresolved.  Even if the Authority had not vacated Summaries 1-9, its finding in *HUD VIII* that the underlying grievance was non-arbitrable because it concerned classification was a jurisdictional determination, not a remedy in itself.  *See HUD VIII*, 70 FLRA at 607-08.  And as the underlying grievance did not change from Summary 9 to Summary 10, any prospective future awards arising from implementation of Summary 9 would also necessarily be vacated for lack of arbitral jurisdiction upon Authority review under § 7122(a).  *See id*.

Additionally, the Authority would have to decline to enforce Summaries 1-9 if the Union attempted to enforce those awards in an ULP proceeding.  The Arbitrator noted in Summary 9 that HUD had repeatedly refused to comply with certain directives related to those awards.  (JA 109-14.)  If the Authority left Summaries 1-9 intact while

60

finding the underlying grievance was non-arbitrable, HUD would likely have refused to comply with Summaries 1-9 based on the finding of non-arbitrability.  The Union would bring an ULP proceeding against HUD for refusing to comply with Summaries 1-9.  *See NTEU 2004*, 392 F.3d at 499; 5 U.S.C. § 7116(a)(8).  In the resulting ULP proceeding, HUD would challenge the Arbitrator's jurisdiction in Summaries 1-9.  *See U.S. Dep't of Veterans Affs., Veterans Affs. Med. Ctr., Asheville N.C.*, 57 FLRA 681, 683 (2002) ("Parties may raise arguments regarding the Authority's jurisdiction at any stage of the Authority's proceedings.").  Upon collateral review, the Authority would then determine the Arbitrator lacked jurisdiction over the underlying grievance because it concerned classification, which would require the Authority to decline to enforce Summaries 1-9.  *See AFGE 1988*, 850 F.2d at 785.  Declining to enforce Summaries 1-9 would result in the same substantive outcome for the parties, because an award which cannot be enforced is functionally vacated.  *Cf. Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 581 (2008) (explaining that under the Federal Arbitration Act, unenforceable provisions of arbitration awards are severable and must be vacated or modified accordingly); *Customs Service*, 43 F.3d at 687

("an unenforceable award is a nullity, which no one would need or want to be reviewed").

While the Authority conceivably could have waited to decline to enforce Summaries 1-9 in a later collateral review of an ULP proceeding, it concluded in *HUD IX* that "[i]t would be unreasonable, as well as inefficient and ineffective" to do so instead of "address[ing] that question directly now on exceptions." *HUD IX*, 71 FLRA at 18. As the Authority recognized, such a holding is amply supported by the Statute's command that its provisions "should be interpreted in a manner consistent with the requirement of an effective and efficient [g]overnment." *Id.* at 20 & n.9 (quoting 5 U.S.C. § 7101(b).)

Any errors the District Court found in the Authority's analysis in *HUD VIII* and *HUD IX* were not sufficiently "extreme" to constitute a *Leedom* violation. The ultimate issue under *Leedom* is not whether the Authority erred, but whether the alleged error was "so extreme that one may view it as jurisdictional or nearly so." *Nyunt*, 589 F.3d at 449. "To rest [*Leedom*] jurisdiction on the basis that the FLRA has erred in reviewing an arbitration award is to 'turn every error of law into a basis for review.'" *U.S. Dep't of the Interior v. FLRA*, 1 F.3d 1059, 1062 (10th

Cir. 1993). Here, the Arbitrator intentionally styled the awards and Summaries as not being about classification and characterized substantive modifications as clarifications in order to retain perpetual jurisdiction. (JA 52-119.) In doing so, the Arbitrator crafted awards which confused even the parties as to when Summaries constituted modifications. (JA 13-23.) To hold that any Authority errors arising from this confusion constitute a *Leedom* violation would impermissibly encourage parties and arbitrators to hide the ball in styling arbitration awards, without even granting the Union the remedy it seeks. After all, the Authority's decision finding that the underlying grievance was non-arbitrable and vacating Summary 10 is not severable from final outcomes vacating Summaries 1-9, whether as a necessary predicate act "concerning" Summary 10 under § 7122(a), or upon collateral review of a future ULP proceeding. For these reasons, any purported Authority errors in *HUD VIII* and *HUD IX* were "garden-variety" errors of law or fact not rising to the kind of "extreme" error required by *Leedom*.

63

## CONCLUSION

For the foregoing reasons, the Authority respectfully requests the Court reverse District Court's finding that it had jurisdiction and vacate the District Court's decisions and orders.

Respectfully submitted,

/s/Rebecca J. Osborne
REBECCA J. OSBORNE
Acting Solicitor
Federal Labor Relations Authority
1400 K Street, NW
Washington, DC  20424
771-444-5778

May 4, 2023

## FED. R. APP. P. RULE 32(A) CERTIFICATION

Pursuant to Fed. R. App. P. 32(a)(7)(B)(i), I hereby certify that this brief is double-spaced (except for extended quotations, headings, and footnotes) and is proportionally spaced, using Century Schoolbook font, 14-point type. Based on a word count of my word processing system, this brief contains fewer than 13,000 words.  It contains 12,307 words excluding exempt material.

/s/ Rebecca J. Osborne
Rebecca J. Osborne
Acting Solicitor
Federal Labor Relations Authority

## CERTIFICATE OF SERVICE

I hereby certify that on this 4th day of May, 2023, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit by using the CM/ECF system. I also certify that the foregoing document is being served on counsel of record and that service will be accomplished by the CM/ECF system.

/s/ Rebecca J. Osborne
Rebecca J. Osborne
Acting Solicitor
Federal Labor Relations Authority

# ADDENDUM

# Relevant Statutes and Other Authorities

## TABLE OF CONTENTS

**Authority**                                          **Page**

STATUTES.................................................................................2

5 U.S.C. § 7101(b). Findings and purpose ......................................2

5 U.S.C. § 7103. Definitions; application.......................................2

5 U.S.C. § 7105. Powers and duties of the Authority.....................3

5 U.S.C. § 7114(a)(1). Representation rights and duties................3

5 U.S.C. § 7116. Unfair labor practices .........................................4

5 U.S.C. § 7121. Grievance procedures..........................................4

5 U.S.C. § 7122. Exceptions to arbitral awards..............................6

5 U.S.C. § 7123(a). Judicial review; enforcement..........................6

28 U.S.C. § 1291. Final decisions of district courts.......................7

OTHER AUTHORITIES ...........................................................7

H.R. Rep. No. 95-1717, at 153 (1978). Judicial Review of the
Decisions of the Federal Labor Relations Authority......................7

## STATUTES

### 5 U.S.C. § 7101(b). Findings and purpose

(b)    It is the purpose of this chapter to prescribe certain rights and obligations of the employees of the Federal Government and to establish procedures which are designed to meet the special requirements and needs of the Government.  The provisions of this chapter should be interpreted in a manner consistent with the requirement of an effective and efficient Government.

### 5 U.S.C. § 7103. Definitions; application

(a)    For the purpose of this chapter—

(8)    "collective bargaining agreement" means an agreement entered into as a result of collective bargaining pursuant to the provisions of this chapter;

(9)    "grievance means any complaint—

(A)    by any employee concerning any matter relating to the employment of the employee;

(B)    by any labor organization concerning any matter relating to the employment of any employee; or

(C)    by any employee, labor organization, or agency concerning—

(i)    the effect or interpretation, or a claim of breach, of a collective bargaining agreement; or

(ii)    any claimed violation, misinterpretation, or misapplication of any law, rule, or regulation affecting conditions of employment;

(12)  "collective bargaining" means the performance of the mutual obligation of the representative of an agency and the exclusive representative of employees in an appropriate unit in the agency to meet at reasonable times and to consult and bargain in a good-faith effort to reach agreement with respect to the conditions of employment affecting such employees and to execute, if requested by either party, a written document incorporating any collective bargaining agreement reached, but the obligation referred to in this paragraph does not compel either party to agree to a proposal or to make a concession;

## 5 U.S.C. § 7105. Powers and duties of the Authority

(a)(2)    The Authority shall, to the extent provided in this chapter and in accordance with regulations prescribed by the Authority—

    (H)    resolve exceptions to arbitrator's awards under section 7122 of this title; and

    (I)    take such other actions as are necessary and appropriate to effectively administer the provisions of this chapter.

## 5 U.S.C. § 7114(a)(1). Representation rights and duties

(a)(1)    A labor organization which has been accorded exclusive recognition is the exclusive representative of the employees in the unit it represents and is entitled to act for, and negotiate collective bargaining agreements covering, all employees in the unit.  An exclusive representative is responsible for representing the interests of all employees in the unit it represents without discrimination and without regard to labor organization membership.

(c)(1)    An agreement between any agency and an exclusive representative shall be subject to approval by the head of the agency.

3

(3)     If the head of the agency does not approve or disapprove the agreement within the 30-day period, the agreement shall take effect and shall be binding on the agency and the exclusive representative subject to the provisions of this chapter and any other applicable law, rule, or regulation.

## 5 U.S.C. § 7116. Unfair labor practices

(a)     For the purpose of this chapter, it shall be an unfair labor practice for an agency—

    (8)     to otherwise fail or refuse to comply with any provision of this chapter.

## 5 U.S.C. § 7121. Grievance procedures

(a) (1)     Except as provided in paragraph (2) of this subsection, any collective bargaining agreement shall provide procedures for the settlement of grievances, including questions of arbitrability.  Except as provided in subsections (d), (e), and (g) of this section, the procedures shall be the exclusive administrative procedures for resolving grievances which fall within its coverage.

(b) (1)     Any negotiated grievance procedure referred to in subsection (a) of this section shall—

    (C)     include procedures that—

        (iii)     provide that any grievance not satisfactorily settled under the negotiated grievance procedure shall be subject to binding arbitration which may be invoked by either the exclusive representative or the agency.

(c)     The preceding subsections of this section shall not apply with respect to any grievance concerning—

    (5)     the classification of any position which does not result in the reduction in grade or pay of an employee

  (c) An aggrieved employee affected by a prohibited personnel practice under section 2302(b)(1) of this title which also falls under the coverage of the negotiated grievance procedure may raise the matter under a statutory procedure or the negotiated procedure, but not both.  An employee shall be deemed to have exercised his option under this subsection to raise the matter under either a statutory procedure or the negotiated procedure at such time as the employee timely initiates an action under the appliable statutory procedure or timely files a grievance in writing, in accordance with the provisions of the parties' negotiated procedure, whichever event occurs first.  Selection of the negotiated procedure in no manner prejudices the right of an aggrieved employee to request the Merit Systems Protection Board to review the final decision pursuant to section 7702 of this title int eh case of any personnel action that could have been appealed to the Board, or, where applicable, to request the Equal Employment Opportunity Commission to review a final decision in any other matter involving a complaint of discrimination of the type prohibited by any law administered by the Equal Employment Opportunity Commission.

(f)     In matters covered under sections 4303 and 7512 of this title which have been raised under the negotiated grievance procedure in accordance with this section, section 7703 of this title pertaining to judicial review shall apply to the award of an arbitrator in the same manner and under the same conditions as if the matter had been decided by the Board. In matters similar to those covered under sections 4303 and 7512 of this title which arise under other personnel systems and which an aggrieved

employee has raised under the negotiated grievance procedure, judicial review of an arbitrator's award may be obtained in the same manner and on the same basis as could be obtained of a final decision in such matters raised under applicable appellate procedures.

## 5 U.S.C. § 7122. Exceptions to arbitral awards

(a)    Either party to arbitration under this chapter may file with the Authority an exception to any arbitrator's award pursuant to the arbitration (other than an award relating to a matter described in section 7121(f) of this title). If upon review the Authority finds that the award is deficient—

    (1)    because it is contrary to any law, rule, or regulation; or
    (2)    on other grounds similar to those applied by Federal courts in private sector labor-management relations;

the Authority may take such action and make such recommendations concerning the award as it considers necessary, consistent with applicable laws, rules, or regulations.

(b)    If no exception to an arbitrator's award is filed under subsection (a) of this section during the 30-day period beginning on the date the award is served on the party, the award shall be final and binding.  An agency shall take the actions required by an arbitrator's final award.  The award may include the payment of backpay (as provided in section 5596 of this title).

## 5 U.S.C. § 7123(a). Judicial review; enforcement

(a)    Any person aggrieved by any final order of the Authority other than an order under--

    (1)    section 7122 of this title (involving an award by an arbitrator), unless the order involves an unfair labor practice under section 7118 of this title

may, during the 60-day period beginning on the date which the order was issued, institute an action for judicial review of the Authority's order in the United States court of appeals in the circuit in which the person resides or transacts business or in the United States Court of Appeals for the District of Columbia.

## 28 U.S.C. § 1291. Final decisions of district courts

The courts of appeals (other than the United States Court of Appeals for the Federal Circuit) shall have jurisdiction of appeals from all final decisions of the district courts of the United States, the United States District Court for the District of the Canal Zone, the District Court of Guam, and the District Court of the Virgin Islands, except where a direct review may be had in the Supreme Court. The jurisdiction of the United States Court of Appeals for the Federal Circuit shall be limited to the jurisdiction described in sections 1292(c) and (d) and 1295 of this title.

## OTHER AUTHORITIES

## H.R. Rep. No. 95-1717, at 153 (1978). Judicial Review of the Decisions of the Federal Labor Relations Authority

The Senate bill made reviewable in court decisions of the Authority concerning unfair labor practices, including awards of arbitrators relating to unfair labor practices. Otherwise, the Senate provides that all decisions of the Authority are final and conclusive, and not subject to further judicial review except for questions arising under the Constitution. (Section 7204(L); Section 7216(F); Section 7221(J).) The Senate provides that decisions of arbitrators in adverse action cases would be appealable directly to the court of appeals or court of claims in the same manner as a decision by the MSPB (Section 7221(B)).

In the House bill, unfair labor practice decisions are appealable as in the Senate. In addition, all other final decisions of the Authority involving an award by an arbitrator, and the appropriateness of the

unit and organization seeks to represent are also appealable to the courts (Section 7123(a)).  Under the House bill decisions by arbitrators in adverse action cases are first appealable to the Authority before there may be an appeal to the court of appeals.

In the case of arbitrators['] awards involving adverse actions, the conferees elected to adopt the approach in the Senate bill.  The decisions of the arbitrator in such matters will be appealable directly to the court of appeals (or court of claims) in the same manner as a decision by MSPB.  In the case of those other matters that are appealable to the Authority the conference report authorizes both the agency and the employee to appeal the final decision of the Authority except in two instances where the House recedes to the Senate.  As in the private section, there will be no judicial review of the Authority's determination of the appropriateness of bargaining units, and there will be no judicial review of the Authority's action on those arbitrators['] awards in grievance cases which are appealable to the Authority.  The Authority will only be authorized to review the award of the arbitrator on very narrow grounds similar to the scope of judicial review of an arbitrator's award in the private section.  In light of the limited nature of the Authority's review, the conferees determined it would be inappropriate for there to be subsequent review by the court of appeals in such matters.